# In re MILWAUKEE LODGE NO. 46 OF BENEVOLENT AND PROTECTIVE ORDER OF ELKS OF UNITED STATES.

## BONDHOLDERS' PROTECTIVE COMMITTEE v. MILWAUKEE LODGE NO. 46 OF BENEVOLENT AND PROTECTIVE ORDER OF ELKS OF UNITED STATES.

### Nos. 5725, 5742.

Circuit Court of Appeals, Seventh Circuit.
April 29, 1936.

Malcolm K. Whyte, of Milwaukee, Wis., for appellant.

James D. Shaw and Van B. Wake, both of Milwaukee, Wis., for appellee.

Before SPARKS and ALSCHULER, Circuit Judges, and LINDLEY, District Judge.

ALSCHULER, Circuit Judge.

A Bondholders' Protective Committee appeals from a decree of the District Court disallowing various claims of the committee for compensation and expenses incurred in the reorganization of the debtor, which owns property in Milwaukee designed and constructed and used for lodge and club purposes.

In March, 1935, the debtor filed its petition alleging its insolvency and seeking relief under the provisions of section 77B of the Bankruptcy Act (11 U.S.C.A. § 207). A plan of reorganization was submitted, and in June, 1935, an order was made confirming the plan.

It appears that in 1924 the debtor executed its first mortgage bonds secured upon the property, and that in May, 1931, when the debtor defaulted in its interest payments, there were outstanding of such bonds $1,032,200. The Bondholders' Protective Committee, constituted some years prior to the reorganization proceedings, had nominated as depositary for bonds the First Wisconsin Trust Company, with which had been deposited somewhat over sixty per cent. of the outstanding bonds. The committee employed a secretary and an attorney, and entered into the negotiations for bringing about a reorganization, incurring expenses for printing, stenography, postage, and the like. The committee presented to the court for allowance its bill [1] aggregating $6,434.75, making no claim whatever for compensation for the services of the committee or of its members. The debtor appears to have conceded the reasonableness of the items except as to the secretary, contending that this item should be reduced. But such a concession is, of course, in no wise binding upon the court in passing upon such claims.

In denying the entire claim of the committee, the court filed an opinion presenting an elaborate discussion of the case, laying down the rule that no person occupying an adversary relation toward the debtor is in any event entitled to any compensation for services rendered and for expense incurred in connection with the reorganization plan, and that section 77B (c) (9) of the Bankruptcy Act (11 U.S.C.A. § 207 (c) (9) ) has no relevancy in cases where the claimant holds such an adversary relation to the debtor. (D.C.) 12 F.Supp. 854. The principle thus laid down in the opinion is carried into the final decree by its concluding clause: "And that the claims of * * * the depositary, the Bondholders' Protective Committee and its counsel for compensation for services rendered or expenses incurred be, in all respects, disallowed as unauthorized by law."

The section reads in part:

"The judge, in addition to the jurisdiction and powers elsewhere in this section conferred upon him, * * * (9) may allow a reasonable compensation for the services rendered and reimbursement for the actual and necessary expenses incurred in connection with the proceeding and the plan by officers, parties in interest, depositaries, reorganization managers and committees or other representatives of creditors or stockholders, and the attorneys or agents of any of the foregoing and of the debtor."

Creditors, of whatever degree or kind, are, of course, in adverse relation toward the debtor, and committees and other representatives of debtors, or their attor-

---

[1] For its miscellaneous disbursements, including printing, supplies, etc., and a portion of the compensation theretofore paid to the secretary of the committee ...............$1240.75

To the secretary of the committee for compensation not theretofore paid ........... 1450.00
To First Wisconsin Trust Company as depositary for the committee ................. 2844.00
To Malcolm K. Whyte, as counsel ...................... 900.00

neys and agents, and depositaries of such creditors partake of the same adversity of relationship toward the debtor as do the creditors themselves. If this relation ipso facto is a bar to any allowance out of the estate for compensation for services rendered and for disbursements and expenses incurred in connection with the proceeding and the plan, the section is in large part practically without meaning.

Courts are not at liberty at their own behest to disregard statutes for the reason that in their application injustice may be done, and that the discretion which the statute reposes in a court or judge may be improperly exercised. We may fully share the apprehensions expressed by the learned judge that improprieties and abuses may creep in if the statute is applied in accordance with what to us seems the plain import of its terms; but this possibility should serve only to make courts the more cautious in applying the statute, and cannot justify its judicial abrogation.

If so it be that this definite authorization to the judge of the court to make allowance out of the estate for the enumerated persons, regardless of whether their relation to the debtor be adverse or otherwise, is fraught with possible inequities and improprieties, the remedy lies with the Congress; and in the meantime the courts should be vigilant to guard against improper allowances in the individual estates.

To deny such claims upon the assumption of a general rule that the statute has no application where the services were rendered and expenses incurred by those who are in an adverse relation toward the debtor, is in our judgment an application of the statute unwarranted by its terms, and at the same time an improper exercise of the discretion, or rather a failure to exercise the discretion, which the statute reposes in the court or the judge passing upon such claims.

There is nothing apparent in the claim as presented, apart from the adverse relation, that would suggest such impropriety in the entire claim which would warrant the conclusion that upon the face of the claim as presented it was properly disallowed.

In the highly commendable anxiety of courts to guard estates against excessive allowances of fees, expenses, and the like, courts should be careful not to go to the opposite extreme of laying down rules of general or special application that would deny allowances which the statute authorizes, in proper cases and for such proper amounts as the court in the exercise of its reasonable discretion shall find.

In the opinion yet other reasons are pointed out for disallowing the item of compensation of the depositary. It appears that the depositary was also the trustee under the original mortgage, in which capacity it received the interest to meet the maturing interest coupons, and that there remained in its hands about $2,800 that had been deposited with it to meet matured coupons which were never presented for payment. It was agreed between the depositary and the others actively interested in the estate that this unpaid interest money in the hands of the trustee should be paid to and held by the depositary in payment of the depositary's compensation; and that any further claim as depositary was waived; and that in case any of the unpaid coupons were afterwards presented for payment the trustee would pay them, and the debtor would reimburse the trustee for such payment. The court declined to approve this agreement upon its presentation in the debtor's petition for a final decree, and no further action thereunder was taken.

It appears that in the deposit agreement, to which all depositing bondholders subscribed, it was provided that the Bondholders' Protective Committee "shall be entitled to be reimbursed for actual expenses and liabilities made or incurred. The Committee shall have a first lien on all the deposited bonds and upon all property which it may purchase, acquire or hold and which may come into its hands, for the disbursements and expenses of the Committee and of the members thereof (including the compensation and expenses of the Depositary, of the Committee, and of such counsel, attorneys, accountants, appraisers, agents and employees as it and/or the Depositary may select) and for any and all indebtedness, obligations or liabilities incurred by the Committee."

During the pendency of the petition for a final decree, the Bondholders' Committee, to safeguard its interests, notified the depositary not to give up the deposited bonds in exchange for those to be issued under the reorganization plan until payment of the committee's claims for reimbursement of its expenses and for the compensation of its depositary were in some way provided for. Upon complaint being

made to the court, it ordered the depositary, which had also been named as trustee under the new mortgage, to exchange the new bonds for the old in accordance with the reorganization plan, without requiring payment to be made as provided in the agreement for depositing the old bonds. This left the committee and the depositary, as between themselves and the depositing bondholders, without practical means for enforcing the agreement, since with their claim upon the deposited bonds thus made ineffective, the otherwise unsecured claims of the committee and the depositary for a small amount against each individual of the very many depositing bondholders would be of very little practical avail.

As against the interests of the debtor and the creditors, we see no necessary conflict or impropriety in this depositary as such, and its capacity as trustee under the original mortgage, or as trustee under the mortgage given pursuant to the plan. Bondholders' committees function presumably for the purpose of enabling various bondholders whose interests are identical to have the advantage of united representation in the protection of their rights. A responsible depositary, to whose physical custody the many bondholders may intrust their bonds pending final adjustment, is often an instrumentality of recognized convenience and necessity in such matters, and in serving such purpose is in general entitled to reasonable compensation.

If it be conceded that the court, in declining to approve the proposed agreement for the depositary's compensation, and in directing the trustee to make exchange of the old for the new security without provision for payment of the depositary's reasonable compensation, was acting within the scope of its reasonable discretion, the situation was such that in some way provision should have been made in the final decree for meeting such reasonable charges as the court in its reasonable discretion might award, especially as it further appears the court had decided that the depositary or the committee should retain no claim against the debtor for such service and outlay.

We are of opinion that, in view of section 77B (c) (9), the claim of the Bondholders' Protective Committee herein was not unauthorized by law as was found in the final decree of the District Court. The said final decree is therefore reversed with respect to the claim of the Bondholders'

Protective Committee for its expense and compensation to its attorneys and the depositary, with directions to that court to adjudicate, in harmony with the foregoing views, the said claim for allowance, and to enter a final decree accordingly.