WEST v. FRADENBURG, WEBB, BEBER, KLUTZNICK & KELLEY.
No. 10594.

Circuit Court of Appeals, Eighth Circuit.
Nov. 19, 1936.

Clinton Brome, of Omaha, Neb., for appellant.

Robert J. Webb, of Omaha, Neb., for appellee.

Before GARDNER, SANBORN, and FARIS, Circuit Judges.

FARIS, Circuit Judge.

This is an appeal from an order of the trial court allowing appellee, a partnership of attorneys, the sum of $1,000 for legal services alleged by appellee to have been rendered by it in and about the reorganization of the Fred Krug Brewing Company, debtor, under the provisions of section 77B of the Bankruptcy Act (11 U. S.C.A. § 207). From this order of allowance the trustee appealed in the customary manner.

Appellee firm was employed by certain so-called rescinding stockholders of the debtor. These client stockholders, some eighteen in all, owned together 10,465 shares of debtor's stock (out of a total of 459,000 of which the holders of 258,000 shares are referred to as rescinding stockholders) for which they had originally paid about $18,000. The holders of the remaining shares of stock, some 448,535, in all, were represented by numerous other attorneys or firms of lawyers; none of whom, that is, attorneys for rescinding stockholders, it may be said in passing, either asked for, or was granted, compensation. True, a fee of $1,000 was allowed to one O'Brien who represented the so-called nonrescinding stockholders. But the allowance to O'Brien was agreed to out of court by the new company, which was obligated to pay such allowances as should be made to counsel.

We have met the very greatest difficulty in ascertaining from a record, peculiarly dark in many aspects, the precise nature of the claims of the so-called rescinding stockholders, some eighteen of whom as said were represented by the appellee firm. We read the record vainly in an effort to ascertain the precise nature of the claims of these rescinding stockholders. In the only written document or pleading ever filed in the proceeding by the appellee firm, so far as the record shows, they are

designated "as creditors or stockholders of the said debtor." So we assume that a rescinding stockholder was one who from the nature of his contract was in doubt as to his status, and who was willing to be either a creditor or a stockholder, as his interest should dictate. In the above pleading, they aver that they "join with the stockholders who have filed objections to the said plan of reorganization for the same reasons as are set forth in the objections filed by said stockholders herein on the ——— day of August, 1935." For relief they asked that their status (seemingly, whether as creditors or stockholders) be adjudicated and determined before any plan of reorganization should be voted upon by either creditors or stockholders; adopting fully in this, as they state, the objections made and the relief theretofore asked by others in like situation.

Beyond the filing of this above-mentioned document, which obviously concerned its clients only, the only other services rendered by appellee firm were (1) an objection, made informally, and in which various other creditors and stockholders joined, to a lease made by the temporary trustee to the Falstaff Brewing Company, with the result that ultimately another lease was made by appellant as trustee, and (2) an objection to the plan of reorganization as to the arrangement proposed for creditors, rescinding stockholders, and nonrescinding stockholders. In the plan first proposed, and afterwards changed upon objections by appellee firm and many others, the creditors were to get five-year debentures, and the stockholders preferred stock in the proposed new company; whereas in the final plan there were elections or options provided for as between cash and debentures and stock or cash for the above three classes.

As said already, the application for the allowance of a fee for legal services was made by appellee, for that, while it had represented a small group of rescinding stockholders, yet in the course of such representation it had performed services which also and incidentally benefited the estate of the debtor. The nature and extent of these services have already been set out. The trial court found that appellee firm had rendered services which were "of a beneficial character to this estate," and specified as such the two items of services we have recounted above.

The applicable language of the statute which provides for allowance of compensation to attorneys and others in a reorganization proceeding under section 77B of the Bankruptcy Act is found in subsection (c) (9), 11 U.S.C.A. § 207(c) (9), and reads thus: "The judge, in addition to the jurisdiction and powers elsewhere in this section conferred upon him, * * * (9) may allow a reasonable compensation for the services rendered and reimbursement for the actual and necessary expenses incurred in connection with the proceeding and the plan by officers, parties in interest, depositaries, reorganization managers and committees or other representatives of creditors or stockholders, and the attorneys or agents of any of the foregoing and of the debtor."

Obviously, the quoted language has the effect to confer on the administrative judge a discretion which will not be disturbed by an appellate court, unless that discretion has been abused, and so it has been held. In re National Lock Co. (C.C.A.) 82 F.(2d) 600; Kargman v. Grocery Center, Inc. (C.C.A.) 83 F.(2d) 617. It is also obvious from this statute that it is difficult, if not impossible, to lay down any general rule which will apply in a thoroughgoing manner to every situation which may arise in a case affecting those named specifically in the above statute, however confidently such a rule may be laid down as to those not mentioned in the statute as possible beneficiaries of the administrative judge's bounty. In other words, it seems fairly plain that under the statute, and so far as concerns the parties, officers, and entities named therein, each case must depend on its own particular facts, and so it has been held. In re Herz, Inc. (C.C.A.) 81 F.(2d) 511. In the case last above cited, the court on the latter point and others pertinent, at page 513, said: "The statute defines the groups that may be compensated, but this in no sense is to be construed as meaning shall be compensated. It is not every service that may in some remote degree contribute to the general welfare of the proceeding that the court is bound to compensate under this section of the statute. If it were, the very purpose of the statute would in many cases be frustrated. Every case must stand upon its own bottom and is subject to the exercise of a sound judicial discretion by the trial court, subject to review in the event of abuse."

It is plain from even a casual reading of the statute under discussion that it is not made clear that the court may even

exercise a discretion in the matter of an allowance to an attorney for a single creditor, or stockholder, or small isolated, independent, and unorganized group of creditors, or stockholders, as in the case at bar. This for the reason that the applicable language is, that an allowance may be made to *"committees or other representatives of creditors or stockholders"* and the attorneys or agents of such. (Our Italics.) It is fairly clear that this means a creditors' committee and a stockholders' committee, or stockholders' protective committee, and the attorneys and agents of such. But does it mean and include the attorney of a single creditor, or a single stockholder, or a small, independent unorganized group of either? It nowhere says that a fee may be allowed to the attorney of a single creditor or a single stockholder, but, using the plural, it may well mean that compensation may be allowed only to the attorney of a "committee of creditors, or stockholders," and then only in cases where the services rendered contributed to the solution of the debtor's difficulties and aided the process of rehabilitation.

The doubt expressed and the query suggested, touching whether the statute quoted applies at all to an attorney for a single creditor, or stockholder, or to small, unorganized groups of either, are bottomed, not alone on the quoted language used by the Congress in writing the statute, but also on numerous apposite utterances of the Supreme Court. See Continental Illinois National Bank & Trust Co. v. Chicago, R. I. & P. R. Co., 294 U.S. 648, 685, 55 S.Ct. 595, 610, 79 L.Ed. 1110; Callaghan v. Reconstruction Finance Corporation, 297 U.S. 464, 469, 56 S.Ct. 519, 521, 80 L.Ed. 804; Realty Corporation v. O'Connor, 295 U.S. 295, 299, 55 S.Ct. 663, 664, 79 L.Ed. 1446.

In the Callaghan Case, supra, 297 U. S. 464, at page 469, 56 S.Ct. 519, 521, 80 L.Ed. 804, the Supreme Court said: "One of the controlling reasons for the enactment of section 77 B was the desire to reduce the cost of reorganization." And in the O'Connor Case, supra, authority is given for a strict construction of the language of the Congress. For at page 299 of 295 U.S., at page 665 of 55 S.Ct., the Supreme Court said: "Extravagant costs of administration in the winding up of estates in bankruptcy have been denounced as crying evils. * * * Congress meant to hit the evil of extrava-gance, and * * * the meaning of its words, if doubtful, must be adapted to its aim."

That the statute does put an allowance to the attorney for *a committee of creditors or stockholders,* within the discretion of the administrative judge, so that abuse thereof in refusing compensation will be corrected by an appellate court, has been held in a number of cases in which the question has been up for judgment. In re Paramount Publix Corporation (C.C.A.) 83 F.(2d) 408; Kargman v. Grocery Center, Inc. (C.C.A.) 83 F.(2d) 617; In re Milwaukee Lodge, etc. (C.C.A.) 83 F.(2d) 662. But we have found but one case, In re Consolidated Motor Parts, Inc. (C.C.A.) 85 F.(2d) 579, nor has the diligence of counsel pointed out any other to us, wherein a fee has been allowed to an attorney for a single creditor, a single bondholder, or a small, independent unorganized group of bondholders, or creditors. However, in view of the seeming trend of the law in this court, Teasdale v. Sefton, etc., Co., 85 F. (2d) 379, and one other, In re Consolidated Motor Parts, Inc., 85 F.(2d) 579, towards the rule that services to the estate, vel non, largely govern the exercise of administrative discretion, we hesitate, till we meet the point face to face, to hold categorically that the statute does not under any situation warrant an allowance to the attorney of a single creditor, or stockholder, or a small independent unorganized group of such. But, if services by such attorneys are to be compensated from the funds of the debtor, the record should clearly indicate that the services rendered were of obvious and outstanding value to the estate, and that they were not mere duplications of the services of other attorneys, within whose duty rendition lay. In re Consolidated Motor Parts, Inc., supra; In re New York Investors, Inc. (C.C.A.) 79 F.(2d) 179; In re Paramount Publix Corporation (C.C.A.) 85 F. (2d) 588. For it is too plain to render exposition necessary, that the allowance of compensation to every attorney who, representing an infinitesimal interest in a pending matter, chooses to inject himself into hearings and matters, without authority or contract, and where such matters are already being given attention by attorneys whose plain duty it is to look after them, would have the effect to parcel out the debtor's assets, among the attorneys for creditors and stockholders, with-

out even the formality of casting lots, as even the Roman soldiers did at Golgotha. It is trite to say that section 77B of the Bankruptcy Act (11 U.S.C.A. § 207) was passed for the benefit of ailing business, and not entirely for the benefit of the Bar. Teasdale v. Sefton, etc., Co., supra; In re Herz, Inc., supra.

■ However, without a dogmatic construction of nonapplicability of a somewhat ambiguous statute, we think the case at bar may be ruled alone on the plain facts in the record. Here ·appellee firm had, we may assume, a contract to represent about 1/46 of the whole number of stockholders and about 1/26 of the so-called rescinding stockholders; they filed in the case but one paper, and that, as already said, was wholly in the interests of their own clients; they protested (orally, so far as the record discloses) against a certain proposed lease, as also did the trustee and others, and the lease was not made; they objected, as did others, to the first proposed reorganization plan, because no provision was made therein for the payment of any sum in cash to creditors or stockholders. Thereupon the second plan was made to provide an option, or election to creditors to take cash, or debentures in the new company and for the stockholders, if they so desired, to sell their stock for cash. But of this provision a member of appellee firm and the only witness who testified for appellee said: "As far as I know our office did not participate in any way, in any negotiations that brought about the plan of the cash offer to stockholders." Indeed, it was said by a witness for appellant, and not denied, that the member of appellee firm most active in the case had stated that he had never read the second or final plan. This plan, as the record clearly shows, differed, as said already, in no material way from the plan discarded, save as to the matter of an option to creditors and stockholders to take cash in lieu of new stock or debentures, and in this change appellee firm had no part. The appellant, as trustee, was ordered to investigate the first lease, and he did so, with the result that a new lease was made. And so what has been said already as to duplication of legal services is applicable.

It follows that we are unable to find in the record any substantial evidence that appellee firm did anything, or rendered any legal services, which so far redounded to the benefit of the estate as to warrant an allowance in its favor.

It follows from what has been said that the case should be reversed and remanded, with directions to enter an order denying compensation to appellee from the estate of the debtor. Let judgment be entered accordingly.