**In re PRINDIBLE.**
No. 7387.

Circuit Court of Appeals, Third Circuit.
Oct. 4, 1940.

Leland W. Walker, of Somerset, Pa., for appellant.

Clair Groover, of Lewisburg, Pa., for appellee.

Before JONES and GOODRICH, Circuit Judges and GANEY, District Judge.

JONES, Circuit Judge.

The appellant, a lien creditor of Prindible, the bankrupt, complains that the trustee in bankruptcy sold, free and clear of all liens, property encumbered by a first lien of the appellant and that the trustee then used the proceeds of the sale to their exhaustion in the payment of general administration expenses with which neither the appellant nor the encumbered property was properly chargeable. The trustee, as the appellee herein, has moved to dismiss the appeal, assigning a number of reasons, only one of which needs to be considered, namely, that the appeal is not from a final order, and is, therefore, premature.

It is of course elementary that, save for excepted instances statutorily prescribed, an appeal lies only from a final order, judgment, or decree. Zoline, Federal Appellate Jurisdiction and Procedure, 3d Ed., Sec. 35. And, to be final, the order, judgment, or decree must be complete as to all parties and as to the whole subject matter therein involved. Collins v. Miller, 252 U.S. 364, 40 S.Ct. 347, 64 L.Ed. 616; Wuerpel v. Canal-Louisiana Bank & Trust Co., 5 Cir., 231 F. 934. This requirement applies equally to action taken by a referee in bankruptcy. His final order or finding is a prerequisite to a petition for court review. Amendatory Act of 1938, Sec. 2, sub. a, 11 U.S.C.A. § 11, sub. a, also § 39, sub. c, 11 U.S.C.A. § 67, sub. c. See, also, In re Reukauff, Sons & Co., D.C., 135 F. 251, 252, where it is observed that a judge is not required to answer questions in advance of action by the referee in respect thereto.

However, the order here appealed from was final. The court below dismissed the appellant's petition for the review of an order by the referee which, in itself, dismissed the appellant's exceptions to the trustee's first and final account and confirmed the account. Because the appellant's exceptions did not assail the trustee's charges for fees and expenses as being improper and excessive, the referee held that the exceptions were not well taken. And, the court below, viewing the exceptions in like manner, dismissed the appellant's petition for review. Whether the credits claimed by the trustee for disbursements for fees and expenses were improper or excessive was immaterial to the question which the appellant sought to raise by the exceptions. Even assuming that such disbursements were reasonable and proper, the appellant's effort was to contest the trustee's right to use the

proceeds from the sale of encumbered property to pay general administration expenses in disregard of the fact that little of such expense was incurred in the trustee's preservation of any equity which the bankrupt, and hence his estate, may have had in the encumbered property. The exceptions were efficient for the appellant's purpose. They formally raised before the referee a material question of law and, so long as they fairly did that, no particular form was required. General Order in Bankruptcy XXVII, 11 U.S.C.A. following section 53, which regulates the matter of court review of a referee's order, requires no more than that "the error complained of" be set forth. And, as now prescribed by the Bankruptcy Act as amended by § 1 of the Act of June 22, 1938, c. 575, 52 Stat. 858, 11 U.S.C.A. § 67, sub. c, a petition for review need do no more than "set forth the order complained of and the alleged errors in respect thereto". The exceptions raised adequately the legal question involved and the referee's action conclusively disposed of the appellant's contention.

Both the referee and the court below were also of the opinion that the exceptions were premature and that the appellant's question could be raised only when there was a fund for distribution by the referee following the confirmation of the trustee's account. In this connection, the court below stated that the account shows $29,200 for distribution. In so saying, the learned court was clearly in error. What the account actually shows is an item, "Amount of Distribution of Real Estate" at a value of $29,200. This, of itself, was no more than a bookkeeping entry. The particular real estate to which the above item refers was sold in bankruptcy to the mortgagees thereof for the discharge of the mortgage debt, the mortgagees contributing, under agreement with the trustee, $1,800 toward the general administration expenses. No part of the consideration, except for the $1,800, ever came into the trustee's hands. The account is balanced and shows nothing for distribution. As is plainly indicated by the account, the trustee disbursed entirely the few thousand dollars in all which actually came into his hands, and there never will be a further fund for distribution. Consequently, in the view taken by the court below, the appellant would continue without opportunity for the redress of what he contends was an improper application of the proceeds from the sale of the real estate which was subject to his lien.

■■ The order of the referee confirming the trustee's account was in fact an order of distribution. It is the duty of the referee, and not of the trustee, to distribute the assets of a bankrupt's estate. Yet, the trustee in the present case anticipated distribution by the referee and actually, himself, made distribution of the entire estate. This is shown by the account which the referee approved and confirmed, thus virtually adopting the trustee's distribution as his own. The appellant's contention was therefore properly before the referee as well as before the court below; and it required an answer on its merits. As the present appeal is from a final order, the appellee's motion to dismiss fails.

■ Notwithstanding the summary disposition that was made of the appellant's claim, the appellee now argues against the merits of the appellant's contention by asserting that the appellant is not entitled to priority in any fund because he failed to file timely as a secured creditor. In the state of the present record, that question is not properly before us. None the less, we may observe that while the limitation in the Bankruptcy Act for the filing of creditors' claims (30 Stat. 560, § 57, as amended, 52 Stat. 866, 11 U.S.C.A. § 93, sub. n), has been construed strictly with respect to an original filing (J. B. Orcutt Co. v. Green, 204 U. S. 96, 27 S.Ct. 195, 51 L.Ed. 390), when a claim has been filed within the statutory period, an amendment thereof may be allowed after the expiration of the time for filing. See Hutchinson v. Otis, Wilcox & Co., 190 U.S. 552, 23 S.Ct. 778, 47 L.Ed. 1179. Thus, a creditor who duly proved a claim as being unsecured was allowed, after the expiration of the time for filing, to amend so as to prove the claim as secured. Maxwell v. McDaniels, 4 Cir., 195 F. 426. Furthermore, the record in the instant case indicates that the appellant's claim to security to the extent of $1,000 of his total claim was proven and allowed at the first meeting of creditors, and, at the same time, a copy of the judgment furnishing the appellant's lien was filed with the referee.

■ But, whether the appellant had a right to a secured claim because of a prior lien and to what extent the proceeds of the security are subject to charges for administration expenses incurred in the trustee's preservation of the particular res are questions which can be determined only from competent and material evidence adduced at a hearing on the merits. The cost

of protecting a fund in court is a dominant charge against the fund. Adair v. Bank of America Nat. T. & S. Ass'n, 303 U.S. 350, 58 S.Ct. 594, 82 L.Ed. 889, and cases there cited. And, where a sale of encumbered property is made free and clear of liens, the costs of preserving the property are deductible from the proceeds of sale before the benefits of the security accrue to the lienor. Adair v. Bank of America Nat. T. & S. Ass'n, supra, note 8, and cases there cited. General administration expenses, however, are not to be charged against pledged property (Stewart v. Platt, 101 U.S. 731, 25 L.Ed. 816) except to the extent that the property is directly benefited or conserved thereby. Robinson v. Dickey, 3 Cir., 36 F.2d 147, and cases cited at page 149. Bankruptcy does not operate to take away the rights of a secured creditor of the bankrupt except where the security was obtained in a manner or within the time proscribed by the Bankruptcy Act. A validly secured creditor of a bankrupt need bear only the costs of enforcing his rights and the necessary expenses incurred in the preservation of the pledged property. Robinson v. Dickey, supra; In re Williams' Estate, 9 Cir., 156 F. 934, 939. See, generally, Remington on Bankruptcy, 4th Ed., § 2606 et seq.

The record in this case discloses an extraordinary situation. The funds which came into the trustee's hands aggregated $3,556.50, consisting of $1,305 from the trustee's sale of real estate, $1,800 contributed by the mortgage creditors who took over the mortgaged property in extinguishment of their claim in bankruptcy, and $451.50 from cash in bank, income, etc. Of the $3,556.50 total fund in the trustee's hands, $1,240 represented the proceeds from the sale of the particular real estate against which the appellant asserted a first lien and for which he had proven as a secured creditor to the extent of $1,000. Yet, the whole of the fund was eaten up by referee's and trustee's commissions, attorney's fees and other expenses. Not only was there nothing left for distribution to general creditors, but an apparent lienholder was completely divested of his security without his consent. The fees and commissions appear to bear no relation to the extent of services or to the quantum of the estate actually administered. In particular, the record shows no justification for the allowance of a $230 fee to the attorney for the bankrupt for what, ordinarily, is a very limited service. But, the trustee acknowledged and distributed a fee in that sum and certainly, without any proof adduced before the referee of unusual services performed by the attorney for the bankrupt.

Trustees in bankruptcy, as well as referees, are public officers and officers of the court, and compensation is owing to them only on clear warrant of law. Callaghan v. R. F. C., 297 U.S. 464, 56 S.Ct. 519, 80 L.Ed. 804; Stitt v. R. F. C., 297 U.S. 464, 56 S.Ct. 519, 80 L.Ed. 804; Realty Associates Securities Corp. v. O'Connor, 295 U.S. 295, 55 S.Ct. 663, 79 L.Ed. 1446. Before trustees in bankruptcy are entitled to compensation upon moneys disbursed or turned over by them to lienholders (52 Stat. 861, 11 U.S.C.A. § 76, sub. c), it is necessary that the trustees show some act of administration with respect to encumbered property, such as preserving an equity of the bankrupt in the property. Gugel v. New Orleans National Bank, 5 Cir., 239 F. 676; C. B. Norton Jewelry Co. v. Hinds, 8 Cir., 245 F. 341. And, even then, compensation has been held to be due only upon the value of the equity of redemption. In re Old Oregon Manufacturing Co., D.C., 236 F. 804. It has been held likewise with respect to pledged personalty. In re Meadows, 2 Cir., 211 F. 948, certiorari denied Hotchkiss v. Lynn, 234 U.S. 763, 34 S.Ct. 997, 58 L.Ed. 1581; In re Ford's Wawbeek Springs, D.C., 7 F.2d 959. In a normal administration, it is "on all moneys disbursed to creditors by the trustees" that a referee is entitled to the compensation fixed by the Bankruptcy Act. 30 Stat. 556 as amended, 52 Stat. 859, 11 U.S.C.A. § 68, sub. a.

Regardless of any exceptions, the referee had a duty to see that the allowances for commissions, attorneys' fees, expenses, etc., were both reasonable and proper. This duty, the referee will now perform by obtaining refunds from those who participated in the division of the bankrupt's estate in excess of reasonable fees, commissions and expenses or surcharge the trustee for the improvident payments. When that is done, the fund representing the value of the encumbered property actually sold by the trustee and for which he received payment of the consideration should be segregated and so accounted for, subject to any proper and reasonable charges or expenses incurred in the preservation of such property by the trustee. The balance may then be distributed to lienholders in the order of

their priority, the residue thereafter, if any, falling into the general estate.

The order of the District Court is reversed, with costs to the appellant, and the case is remanded for further proceedings not inconsistent with this opinion.